UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

LEONARD LEON, MELISSA
MARLENE SANABIRA
RODRIGUEZ AND RAMON
SANTIAGO RODRIGUEZ
TORRES, AND MATTHEW PAUL
SCHWERI AND DURIA R.
RODRIGUEZ SCHWERI, *as
individuals and on behalf of those
similarly situated*,

    Plaintiffs,                                  CASE NO.

vs.                                           Jury Trial Demanded

DISNEY DESTINATIONS, LLC                <u>CLASS ACTION</u>
a Florida Limited Liability Company,

    Defendant.
_____/

<u>CLASS COMPLAINT</u>

        Plaintiffs, Melissa Marlene Sanabira Rodriguez and Ramon Santiago Rodriguez Torres (Mr. and Mrs. Rodriguez), Matthew Paul Schweri and Duria R. Rodriguez Schweri ("Mr. and Mrs. Schweri"), and Leonard Leon ("Mr. Leon") by and through the undersigned counsel and on their own behalf and on behalf of those similarly situated ("the Class"), hereby file the following Class Complaint against Defendant, Disney Destinations, LLC ("Defendant"), pursuant to Fed. R. Civ. P. 15(a)(1)(B), and allege as follows:

        1.      This is an action for damages for breach of contract and violations of the Electronic Funds Transfer Act, 15 U.S.C. § 1693 *et seq*. ("EFTA"), arising from the sale of an annual pass to the Defendant's theme parks.

## PARTIES

2. Mr. and Mrs. Rodriguez are husband and wife, and are individuals residing in Dade County, Florida.

3. Mr. and Mrs. Schweri are husband and wife, and are individuals residing in Dade County, Florida.

4. Mr. Leon is an individual residing in Hillsborough County, Florida.

5. Defendant is a Florida Corporation with its principal place of business in Florida.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action under 15 U.S.C. § 1693m(g) (EFTA) and 28 U.S.C. § 1331 (federal question). The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. In addition, the Parties have signed agreements agreeing to jurisdiction in Orange County, Florida Circuit Court or in "such other court sitting in said county and having subject matter jurisdiction." Because Plaintiffs assert claims arising out of a federal question, this Court is the proper jurisdiction.

7. This Court also has jurisdiction over the action under 28 U.S.C. § 1332. The aggregated claims of the individual members of the proposed Class exceed the sum or value of $5,000,000, exclusive of costs and interest, and this is a Class action in which some of the members of the Class are citizens of a state different than the Defendant.

8. Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. § 1391(b) because the Defendant resides in this district.

## FACTS RELEVANT TO ALL CLASS REPRESENTITIVES

9. Defendant operates theme parks around the world, including in Florida. Defendant offers consumers who wish to purchase annual passes to any of its parks an option to pay for the passes by providing a credit card, debit card, or bank account information. Defendant represented to the public and the Plaintiffs that the purchase of annual passes would provide passholders broad and guaranteed access to Defendant's parks to use as they chose with only specified restrictions such as pre-disclosed blackout dates.

10. If a passholder elects to pay for all or part of his or her annual pass in monthly installments, Defendant automatically debits each installment from the consumer's credit card, debit card, or bank account on a monthly basis.

11. The annual passholders give specific authorization to Defendant regarding these monthly automatic charges. That authorization specifies an amount that can be taken. No additional authority exists to take amounts in excess of the amount specified in the agreement between Defendant and annual passholders.

12. In April 2020, Defendant closed its parks due to the COVID-19 pandemic.

13. Due to closing its parks, Defendant suspended the monthly auto-payments until the parks could reopen.

14. Upon determining that parks would reopen in July 2020, Defendant began the process of starting the auto-payments described above. However, in approximately the first few days of July annual passholders were shockingly and suddenly charged for several months' worth of payments all at once.

15. The amounts charged to annual passholders far exceeded any authority given to Defendant to take an auto-payment. This caused harm to annual passholders who were wrongly

deprived of their assets and was a direct breach of the contract between Defendant and annual passholders.

16. Upon reopening, the broad access previously given to annual passholders will be severely restricted. Instead of the previously disclosed restrictions, such as blackout dates, now annual passholders have no guaranteed access to Defendant's parks, must make a reservation in order to utilize their annual pass, and are restricted to one park per day.

17. Defendant has conceded that there will be a "limited capacity period" where "it may be difficult for Annual Passholders to get park reservations." Also, Defendant has conceded that certain "pass benefits and features will not be available" and that "park experiences and offering will be modified and subject to limited availability or even closure."

A. **Mr. and Mrs. Rodriguez**

18. Mr. and Mrs. Rodriguez first purchased and annual pass in or around May 2019. They later timely renewed their annual pass in or around April 2020.

19. Their annual pass had limited blackout dates for approximately 2 weeks in December and approximately and 2 weeks around March or April. Otherwise, Mr. and Mrs. Rodriguez's access to Defendant's parks was guaranteed if the park had not met maximum capacity as that capacity was determined at the time of entering the contract. Mr. and Mrs. Rodriguez's annual pass allowed them to access multiple parks, including in a single day, with no reservation required.

20. On or about May of 2019, Mr. and Mrs. Rodriguez purchased their annual passes, paid a down payment, and agreed to pay additional payment of approximately $170.00 per month for 12 months via automatic debit. Around April of 2020, Mr. and Mrs. Rodriguez renewed their annual passes and were able to maintain the same monthly payment.

21. The automatic debit was drawn on a checking account via debit card, not a credit card.

22. Around the beginning of July, Defendant suddenly and wrongfully debited the bank account debit card for approximately $346.00, amounting to over two months of agreed payments.

23. This sudden, unexpected, and unauthorized reduction in their funds caused stress and aggravation. For instance, because of the overbilling, Mr. and Mrs. Rodriguez had to withhold from paying a car payment.

24. In addition to the improper debiting of their debit card, Mr. and Mrs. Rodriguez have invested in annual passes that they cannot use as intended. After paying a significant down payment and monthly payments, Mr. and Mrs. Rodriguez are significantly invested in the annual pass agreement with Defendant. As a result of Defendant's restrictions, they will not be able to utilize their annual pass as Defendant agreed in their contract.

**B. Mr. and Mrs. Schweri**

25. Mr. and Mrs. Schweri first purchased their annual pass in late 2019. At the time, their goal for use of the pass was to have monthly access to Defendant's parks.

26. Their annual pass had limited blackout dates for approximately three weeks in December and approximately two weeks in April. Otherwise, Mr. and Mrs. Schweri's access to Defendant's parks was guaranteed if the park had not met maximum capacity as that capacity was determined at the time of entering the contract. Mr. and Mrs. Schweri's annual pass allowed them access to multiple parks in one day with no reservations required.

27. On or about October or November of 2019, Mr. and Mrs. Schweri purchased their annual passes and paid approximately $800.00 as a down payment and agreed to pay additional payment of $170.00 per month for 12 months via automatic debit.

28. The automatic debit was drawn on a bank account via debit card, not a credit card.

29. Around the beginning of July, Defendant suddenly and wrongfully debited the bank account debit card for approximately $803.00, amounting to over four months of agreed payments.

30. This sudden, unexpected, and unauthorized reduction in their funds caused stress and aggravation. Mrs. Schweri was frantic about the lost funds and the improperly debit caused the Schweri's extreme financial hardship. For instance, because of the overbilling, two separate bills owed to third parties required emergency deferment or intervention. Defendant's overbilling caused a third-party's automatic debit to be denied for insufficient funds and Mr. and Mrs. Schweri had to pay an overdraft fee.

31. In addition to the improper debiting of their debit card, Mr. and Mrs. Schweri have invested in annual passes that they cannot use as intended. After paying a significant down payment and several months' payments, Mr. and Mrs. Schweri are significantly invested in the annual pass agreement with Defendant. As a result of Defendant's restrictions, they will not be able to utilize their annual pass as Defendant agreed in their contract.

C. **Mr. Leon**

32. Mr. Leon first purchased his annual pass around November of 2019.

33. His annual pass had limited blackout dates for approximately three weeks in December and approximately two weeks in around April. Otherwise, Mr. Leon's access to Defendant's parks was guaranteed if the park had not met maximum capacity as that capacity was determined at the time of entering the contract. Mr. Leon's annual pass allowed for access to multiple parks with no reservations required.

34. In 2013 or 2014, Mr. Leon first purchased his annual passes and paid approximately $600.00 as a down payment and agreed to pay additional payments of approximately $150.00 per month. The annual pass contracts have been renewed in the years since.

35. The automatic debit was drawn on a checking account via debit card, not a credit card.

36. Around the beginning of July, Defendant suddenly and wrongfully debited the bank account debit card for approximately $637.00, amounting to approximately four months of agreed payments.

37. This sudden, unexpected, and unauthorized reduction in their funds caused stress and aggravation. Mr. Leon and his wife had not planned on this large expense. The stress was increased because of another large expense that had occurred on the same day.

38. In addition to the improper debiting of his debit card, Mr. Leon has invested in an annual pass that he cannot use as intended. After paying a significant down payment and making monthly payments, Mr. Leon is significantly invested in the annual pass agreement with Defendant. As a result of Defendant's restrictions, he will not be able to utilize their annual pass as Defendant agreed in their contract.

## CLASS ALLEGATIONS

39. Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Fed. R. Civ. P. 23. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

40. Plaintiffs propose three classes defined as follows:

### FIRST BREACH CLASS ("OVERBILLING CLASS")

a. All natural persons in the State of Florida;
b. who purchased an annual pass to one of Defendant's Florida theme parks;
c. who funded the annual pass through Defendant's automatic debit system; and
d. who were charged any additional amounts beyond what was authorized by contract;
e. within the applicable statute of limitations in their respective states.

### SECOND BREACH CLASS ("DENIAL OF ACCESS CLASS")

a. All natural persons in the State of Florida;
b. who purchased an annual pass to one of Defendant's theme parks;
c. who continue to be charged for access to the parks as was originally agreed;
d. who are not able to access the parks and related services as advertised.
e. within the applicable statute of limitations in their respective states;

### ELECTRONIC FUNDS TRANSFER CLASS ("EFTA CLASS")

a. All natural persons in the United States;
b. who purchased an annual pass to one of Defendant's theme parks, and who funded the annual pass through Defendant's automatic debit system using a debit card or by providing bank account information; and
c. who were charged through an electronic fund transfer to their debit or bank account any additional amounts beyond what was authorized.

41. The members of the Classes are so numerous that joinder is impractical. The Classes consist of thousands of members, the identity of whom is within the knowledge of and can be ascertained only by resort to Defendant's records.

42. The claims of the representative Plaintiffs are typical of the claims of all class members in all three classes in that everyone purchased an annual pass with Defendant and were to be charged an agreed amount monthly in exchange for specific access and services. The Plaintiffs, like all Class members, all experienced the same issues regarding overbilling and limited access to Defendant's parks. For the EFTA Class, the Plaintiffs, like all Class members, had the overbilling

8

occur to their debit or bank account beyond the amount authorized, per the contract terms, the Defendant did not possess the contractual right to charge any additional amounts beyond what was authorized. The representative Plaintiffs, like all Class members, have been damaged by Defendant's misconduct in that they have been charged additional payments when the Defendant did not have the contractual right to do so. Even if funds were later refunded, Plaintiffs, like all Class members, we deprived of their funds and wrongfully exposed to financial hardship and anguish, including the inability to pay bills and the stress such financial hardships causes. The representative Plaintiffs, like all Class members, are also experiencing limited access to Defendant's parks in violation of the contract related to their annual memberships.

43. The Class action poses questions of law and fact that are common to and affect the rights of all members of the Classes. Such questions of law and fact common to the Classes and include, but are not limited to, the following:

   a. Whether or not Defendant breached the form contract with the Class members by charging an amount that Defendant had no contractual right nor authorization to do so under the form contract;

   b. If Defendant breached the form contracts, what is the proper measure to be applied in determining damages;

   c. Whether Defendant obtained valid authorization from all EFTA Class members to electronically withdraw the funds from the Class's members' debit or bank accounts;

   d. Whether the periodic electronic withdrawals from EFTA Class Members' accounts initiated by Defendant are "preauthorized electronic fund transfers" within the meaning of the EFTA, 15 U.S.C. § 1693a(9) and § 1693e.;

e.  Whether Defendant complied with the requirements of the EFTA in connection with the debits and/or EFTs initiated from EFTA Class Members' accounts;

f.  Whether Defendant has violated the EFTA with respect to representative Plaintiffs, and the EFTA Class Members.

g.  Whether Defendant's limitation of access to its parks is a violation of the form contract with all annual passholders.

44. Based on the facts and circumstances set forth herein, Plaintiffs' claims are typical of the claims of the members of the Classes, in that they arise out of the same uniform contract. Plaintiffs' claims and the claims of all Class members arise out of Defendant's common course of conduct and Plaintiffs' claims and the claims of all Class members are based upon the same legal theories.

45. Plaintiffs will fairly and adequately protect and represent the interests of each member of the Classes. Plaintiffs understand the issues in this case and are committed to vigorously pursuing this claim on behalf of the Classes. Plaintiffs have suffered the damages alleged and have no interests antagonistic to the interests of any other Class member. Further, neither Plaintiffs nor their counsel have any interests that might cause them not to vigorously pursue this action.

46. Plaintiffs are committed to the vigorous prosecution of this action and have retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers. Accordingly, Plaintiffs are adequate representatives and will fairly and adequately protect the interests of the Classes.

47. A Class action is superior to other available methods for the fair and efficient adjudication of the controversy. Prosecuting separate actions by individual members of the Classes

would create the risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for Defendant.

48. Further, prosecuting separate actions by individual members of the Classes would create the risk of adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications. Further, individualized litigation would significantly increase the delay and expense to all parties and to the Court.  A Class action presents far fewer management difficulties, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

49. Questions of law or fact common to the Classes predominate over any questions affecting only individual members as the claims are amenable to common proof based on the Defendant's uniform standardized contract.  Since the reasonable expectations of a party to a standardized form contract are judged objectively, the entire Class will win or lose on their claims based upon the same evidence and legal standards.

## FIRST CLAIM FOR RELIEF - BREACH OF CONTRACT
## (OVERBILLING CLASS)

50. Plaintiffs and the Class members incorporate by reference paragraphs 1 through 49 of this Class Complaint as though stated fully herein.

51. Plaintiffs and the Class members entered into contracts with the Defendant for an annual pass.

52. Defendant charged Plaintiffs and the Class members amounts Defendant had no contractual right nor authorization to charge.  By charging Plaintiffs and the Class members beyond what was authorized, Defendant breached its contract.

53. Plaintiffs and the Class members have performed all, or substantially all, of the obligations imposed on them under the contract with Defendant.

54. Plaintiffs and the Class members have sustained damages as a result of Defendant's breach of contract. Even if the overbilled funds were later refunded, Plaintiffs and class members were deprived of their funds and suffered economic hardship and mental anguish.

WHEREFORE, Plaintiffs and the Class request that the Court enter Judgment in their favor for: (1) Certification of this matter to proceed as a class action; (2) actual damages in an amount according to proof; and (3) for such other and further relief as the Court deems just and proper.

### SECOND CLAIM FOR RELIEF - BREACH OF CONTRACT
### (DENIAL OF ACCESS CLASS)

55. Plaintiffs and the Class members incorporate by reference paragraphs 1 through 49 of this Class Complaint as though stated fully herein.

56. Plaintiffs and the Class members entered into contracts with the Defendant for an annual pass.

57. Plaintiffs purchased an annual pass to one of Defendant's theme parks.

58. Plaintiffs continue to be charged for access to the parks as originally agreed; however, Plaintiffs have had their access to the parks severely restricted and will not be able to access the parks and related services as advertised. As a result of Defendant's restrictions, Plaintiffs will not be able to utilize their annual pass as Defendant agreed in their contracts. By continuing to charge in full for the previously advertised access that it no longer provides, Defendant breached its contract.

59. Plaintiffs and the Class members have performed all, or substantially all, of the obligations imposed on them under the contract with Defendant.

60. Plaintiffs and the Class members have sustained damages as a result of Defendant's breach of contract.

WHEREFORE, Plaintiffs and the Class request that the Court enter Judgment in their favor for: (1) Certification of this matter to proceed as a class action; (2) actual damages in an amount according to proof; and (3) for such other and further relief as the Court deems just and proper.

### THIRD CLAIM FOR RELIEF - VIOLATION OF THE EFTA

61. Plaintiffs and the EFTA Subclass, incorporate by reference paragraphs 1 through 49 of this Class Complaint as though fully stated herein.

62. Plaintiff and each EFTA Class member maintained an "account" as that term is defined by 15 U.S.C. § 1693(a)(2).

63. Plaintiff and all EFTA Class members, are "consumers" within the meaning of 15 U.S.C. § 1693(a)(5). At all times material hereto, Defendant was a "person" subject to liability under § 1693m of the EFTA.

64. Plaintiff and all EFTA Class members entered into the Defendant's uniform contract for an annual pass with the agreement that Defendant would automatically withdraw funds from their debit card or bank account only as agreed and authorized. The foregoing qualifies as a preauthorized electronic fund transfer ("EFT") under the EFTA as the EFT was authorized in advance to recur at substantially regular intervals.

65. Defendant has violated 15 U.S.C. § 1693e(a), in that Defendant failed to obtain the required authorization from the Plaintiff and the EFTA Class members, in writing, of the EFT(s) assessed by Defendant beyond the amounts authorized in the contract. As described in Defendant's contract, Defendant did not have authority to charge the accounts of Plaintiff and the EFTA Class Members beyond agreed amounts.

66. Defendant transferred funds from Plaintiff's and the EFTA Class members' accounts as set forth above without actual authority to initiate those transfers, and for which Plaintiff and the EFTA Class members received no benefit.

WHEREFORE, Plaintiffs and the EFTA Class request that the Court enter judgment in their favor for: (1) Certification of this matter to proceed as a class action; (2) actual damages, statutory damages, reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1693m(a)(1), 1693m(a)(2)(A), 1693m(a)(B), and 1693m(a)3; and (3) For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs and the Classes demand a trial by jury for all issues so triable.

Dated: July 10, 2020                                Respectfully Submitted,

| | |
|---|---|
| **KYNES, MARKMAN & FELMAN, P.A.**<br>P.O. Box 3396<br>Tampa, Florida  33601<br>Phone:  (813) 229-1118<br>Fax:     (813)  221-6750<br><br>/s/ Katherine E. Yanes<br><br>**KATHERINE EARLE YANES, ESQ.**<br>Florida Bar. No. 658464<br>e-mail: kyanes@kmf-law.com<br>**GUS M. CENTRONE, ESQ.**<br>Florida Bar No. 30151<br>e-mail: gcentrone@kmf-law.com<br>Co-Counsel for Plaintiffs | **SHRADER LAW, PLLC**<br>612 W. Bay Street<br>Tampa, Florida 33606<br>Phone:  (813) 360-1529<br>Fax:     (813) 336-0832<br><br>/s/ Brian L. Shrader<br><br>**BRIAN L. SHRADER, ESQ.**<br>Florida Bar No. 57251<br>e-mail: bshrader@shraderlawfirm.com<br>Co-Counsel for Plaintiffs<br><br><br>**CHRISTIE D. ARKOVICH, P.A.**<br>1520 W Cleveland St.<br>Tampa, FL 33606-1807<br>Phone: (813) 258-2808<br>Fax: (813) 258-5911<br><br>/s/ Christie D. Arkovich<br>**CHRISTIE D. ARKOVICH**<br>Florida Bar No. 963690<br>e-mail: christie@christiearkovich.com<br>Co-Counsel for Plaintiffs |